[Civ. No. 19676.   First Dist., Div. Two.   Dec. 18, 1961.]

ALBERN E. LAMKIN et al., Plaintiffs and Respondents, v. MARGARET B. VIERRA et al., Defendants and Appellants.

W. I. Follett and Howard R. Benson for Defendants and Appellants.

Loube, Rounseville & Becker and Howard Silberman for Plaintiffs and Respondents.

AGEE, J.—Defendants appeal from a judgment on the pleadings holding that a deposit receipt agreement for the sale and purchase of certain realty was void, and that therefore plaintiffs were entitled to the return of their deposit and were not liable in damages on defendants' cross-complaint.

Joseph V. Vierra died intestate on July 14, 1946, and was at the time of his death the sole owner of the residential property located at 2521 East 27th Street, Oakland, California.

On April 11, 1959, plaintiffs, who are husband and wife, signed a regular form deposit receipt agreement agreeing to purchase the property for $9,100, and decedent's daughter, Margaret B. Vierra, signed as the "Seller" with the title "Administrator" immediately below her signature. Plaintiffs paid her $910 at that time and agreed to pay the balance in six months.

On April 22, 1959, Margaret B. Vierra was appointed administratrix of the estate of her father. Thereafter, plaintiffs made demand for the return of the deposit.

On October 22, 1959, plaintiffs filed a complaint for return of the $910 against defendants "Margaret B. Vierra and Margaret B. Vierra, as administratrix of the Estate of Joseph V. Vierra," alleging her appointment and that "defendants and each of them received from the plaintiffs the sum of $910.00 for the use of plaintiffs." The answer, filed December 7, 1959, was likewise by "Margaret B. Vierra and Margaret B. Vierra as Administratrix" etc. and expressly admits that

"said defendants received from plaintiffs the sum of $910.00 . . ." (Emphasis added.)

In their closing brief, appellants call attention to the incongruity of a judgment against Margaret B. Vierra as an individual and also as an administratrix, particularly in view of the trial court's holding that she was not qualified or entitled to act as an administratrix at the time of the receipt of the money. However, the answer admits that it was received in *both* capacities and she cannot now complain if the judgment orders *both* to return the money. Incidentally, the appellants' closing brief contains the first mention of the point.

Appellants added a cross-complaint to their answer, again using the same dual designation of Margaret B. Vierra and alleging that cross-complainants have been damaged in the sum of $4,100 by reason of plaintiffs' failure to pay the balance of $8,190.

Appellants first cite cases to the effect that a vendor need not be the absolute owner of property at the time he executes an agreement of sale provided that he can furnish a good title when the time comes for him to do so under the agreement. None of these cases involve an attempted or purported sale of a decedent's property. Here, the vendor, Margaret B. Vierra, was purporting to contract in a capacity which she did not have, that of administratrix. As was said in *Pryor* v. *Downey,* 50 Cal. 388, 400 [19 Am. Rep. 656] : "It necessarily follows, that an attempted sale of land of an estate by one not executor or administrator can transfer no right, even though there should be a subsequent order of the Probate Court as upon a final accounting by the pretended administrator." The *Pryor* case was cited with approval in *Texas Co.* v. *Bank of America etc. Assn.,* 5 Cal.2d 35 [53 P.2d 127], where recovery of the consideration paid for a lease executed by the bank as a special administrator was allowed because the appointment of the bank as special administrator was void and therefore the lease was void. The court drew an analogy from the sale of realty, saying at page 40 : "An attempted sale of land by one who assumes to act as administrator, but who has not been regularly appointed, and who has not given the bond and qualified and received letters as such, is void, even if the sale is ordered and approved by the probate court." (Citing *Pryor* v. *Downey, supra.*)

Defendants contend that the trial court erred in rendering judgment on the pleadings by failing to recognize the rule

that ". . . the issuance of letters of administration relates back to the death of the intestate and validates those acts of an executor de son tort which he could properly have performed after issuance of such letters."

Defendants cite *Estate of Machado,* 186 Cal. 246 [199 P. 505], and decisions from 12 other jurisdictions. ▮ The doctrine of executorship *de son tort* derives from the common law. ▮ "An executor de son tort is a person who without authority intermeddles with the estate of a decedent and does such acts as properly belong to the office of executor or administrator, and thereby becomes a sort of quasi executor, although only for the purpose of being sued or made liable for the assets with which he has intermeddled. . . . [A]nd in many states the so-called office of executor de son tort has been abolished by statute, or is considered inconsistent with the prevalent system of administration." (24 C.J. p. 1211, "Executors De Son Tort.") (See *Bowden* v. *Pierce,* 73 Cal. 459, 463 [14 P. 302, 15 P. 64] ; *Pryor* v. *Downey, supra,* 399.)

The doctrine has been widely criticised (Bancroft, Prob. Prac. 2d, § 379; Woerner, American Law of Administration, vol. 2, § 198; Schouler on Wills, Executors and Administrators, 6th ed., vol. 4, § 3547, p. 2834). "There is neither occasion nor room [for the doctrine] in those States which have vested complete jurisdiction in Probate courts to control the settlement of estates of deceased persons . . ." (Woerner, *supra,* vol. 2, p. 652).

▮ In California the administration of a decedent's estate has from an early date been governed by comprehensive code provisions, originally in the Civil Code and Code of Civil Procedure and, since 1931, in the Probate Code. Accordingly, the doctrine of executorship *de son tort* has long been repudiated in this state. (*Bowden* v. *Pierce* (1887) *supra,* p. 463.)

▮ However, appellants contend that the doctrine of relation-back does exist in California, i.e., that a subsequent grant of letters of administration relates back to validate those acts of a person in behalf of the estate which would have been proper had he been a qualified administrator when the acts were committed.

The only California case cited by appellants in support of this statement is *Estate of Machado, supra.* In that case, the administrator, before his appointment as such, paid $1,500 on notes of the decedent held by a bank. The payment was allowed in the order settling his final account as administrator. On appeal the allowance was affirmed, the court stating: "The

estate was paying interest on the amount and it was clearly for the best interest of the estate that the obligation should be liquidated without delay. Under the circumstances we find no embarrassment in holding that the appointment subsequently made related back, for the purposes of this payment, to the date of filing the petition for letters.'' (P. 250.)

An earlier case, *Estate of Heeney*, 3 Cal.App. 548 [86 P. 842], also came up on an appeal from the order settling the final account of an administrator. Heeney died intestate in 1892, leaving only a mortgaged home. Richard, a son, was issued letters of administration in 1901. In 1895, Richard, assisted by a brother, paid the mortgage debt and caused the mortgage to be assigned to an older sister. Richard and the brother also paid all the taxes on the home from 1892 to 1903. In 1900, Richard employed and paid an attorney to defend actions to foreclose against the home on certain liens for street work. Richard claimed credit in his final accounting for such sums as were expended by him. The sister's heirs objected. The appellate court disallowed the payment of the mortgage debt for reasons not pertinent to this appeal, but it did state as follows: ''It is claimed by respondent that his appointment and qualification caused his letters or authority to relate back to the time of his father's death, thus validating all of his acts before such appointment, which were, in their nature, beneficial to the estate and which would come within the scope of an administrator's rightful authority. That this rule obtains in many jurisdictions cannot be doubted. . . . But in view of our specific and comprehensive Code provisions regulating the settling of estates, there can be very little room for application of such a rule in this state.'' (Pp. 550-551.) However, the court did indicate a willingness to permit Richard's recovery of payment for attorney's fees and taxes under the following conditions: ''If the liability therefor was incurred after his father's death and the employment of an attorney was necessary to *safeguard the interests of the estate,* they should be allowed under the rule first considered herein. The same may be said of taxes paid by the administrator . . .'' (p. 553).

Both of these cases are clearly distinguishable from the facts of the instant case. The question presented in each was whether an administrator should receive credit in his final accounting for sums *expended* in behalf of the estate prior to his appointment. In both instances, the estate stood to be unjustly enriched at the expense of the administrators if the

credit was not allowed. In neither case did the court espouse an unqualified recognition of the doctrine of relation-back. To the contrary, in each case the doctrine was recognized only to the limited extent necessary to avoid the clearest injustice. No similar reason for application of the doctrine appears in the facts of the instant case.

Moreover, in the case at bar, it can be no justification for application of the doctrine that the contract entered into was necessary to preserve the estate, or to pay its debts, or to protect any interests therein. The Probate Code recognizes that such necessity may arise before an administrator can be appointed, and provides within its own framework a procedure for the speedy appointment of a special administrator in such cases. (Prob. Code, §§ 460-469.) Such appointment "may be made at any time without notice . . ." (Prob. Code, § 461).

The courts should not sanction conduct undertaken in disregard of the provisions of the Probate Code except to avoid injustice. And the doctrine of relation-back, to whatever extent it may exist in this state consistent with our codified probate laws, can have no application to the facts of the instant case.

The judgment is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.